IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-65-BO

| | |
|---|---|
| REBECCA MUSE HUNT, *by and through her Interim Guardians, Glynda Muse and Stephen Muse,* GLYNDA MUSE, and STEPHEN MUSE, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL MAURICE SMITH, *individually and in his official capacity,* THE CITY OF LUMBERTON, MICHAEL MCNEILL, *individually and in his official capacity as Chief of Police,* <br><br> Defendants. | **O R D E R** |

This cause is before the Court on defendants' motion for summary judgment. The parties have also moved to seal some of the exhibits in the record. For the reasons discussed below, the motions are granted.

## BACKGROUND

The parents of Rebecca Hunt ("Hunt"), acting as her appointed interim guardians, brought this action in Robeson County Superior Court against Officer Daniel Smith, Lumberton Chief of Police Michael McNeill, and the City of Lumberton following an officer-involved shooting that occurred on November 22, 2016.

During the afternoon of the date of the incident, Hunt had been drinking and smoking crack cocaine. She and a friend, Billy Hammonds, decided to drive to a Food Lion grocery store, where

she shoplifted alcoholic beverages. The grocery store alerted the police. After leaving the Food Lion, Hunt and Hammonds drove to a Dollar General store.

Officer Smith was on patrol and spotted a truck in the Dollar General parking lot matching the description of the truck involved in the Food Lion larceny. After seeing Hunt, he parked his squad car behind, but to the left of, the truck. Officer Smith ordered Hammonds—who was in the driver's seat—out of the vehicle. Against the driver-side of the truck with the driver-side door open, Officer Smith began the process of patting down and cuffing Hammonds. Hunt, who was still in the truck, moved from the front passenger's seat into the driver's seat, put the truck in reverse, and drove backwards. Officer Smith had seen Hunt transfer seats and moved Hammonds clear of the vehicle before Hunt started driving. Officer Smith, however, was caught by the open door of the reversing truck and was propelled along with it. After reversing for about 2.5 seconds, the truck stopped, and then began to move forward at a slow pace, eventually coming to a full stop near the location it was originally parked. At some point during this brief, but attempted getaway, Officer Smith shot Hunt twice at point blank range through the open driver-side doorway.

Hunt suffered severe injuries from the shooting. She was hospitalized for six months and had to undergo numerous surgeries. The medical bills from her hospitalization exceed $2.3 million.

Hunt's parents, acting as her interim guardians, filed this lawsuit in state court in February 2019. Their complaint asserts the following causes of action: (1) an assault and battery claim against Officer Smith in his individual and official capacity; (2) an intentional/negligent infliction of emotional distress claim against Officer Smith and Police Chief McNeill; and (3) claims under 42 U.S.C. § 1983 that include unlawful use of deadly force by Officer Smith and *Monell* claims against the City of Lumberton. Comp. ¶¶ 32–44, DE 1-5. Defendants removed the case to this

2

Case 7:19-cv-00065-BO   Document 40   Filed 06/09/20   Page 2 of 12

Court pursuant to 28 U.S.C. § 1441 and on March 2, 2020, following the close of discovery, moved for summary judgment. That motion is fully briefed and is ripe for disposition.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotations and alterations omitted). Once the moving party meets its initial burden under Rule 56(c), to survive summary judgment, the nonmoving party must provide sufficient evidence to demonstrate that there is a genuine issue of material fact for trial. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In determining whether a genuine issue of material fact exists for trial, a court must view the evidence in the light most favorable to the nonmoving party unless the nonmovant's version of events is "blatantly contradicted" by the record. *Id.* Moreover, "a mere scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotations omitted).

I. There is no genuine dispute of material fact

   A. Defendants' facts and evidence

      In support of their summary judgment motion, defendants rely on, among other things: (1) Officer Smith's deposition, (2) Hunt's deposition, (3) an audio recording from the police department radio traffic system, and (4) video footage of the incident taken from the Dollar General's security system. From this evidence, defendants proffer the following version of events.

3

On November 22, 2016, Hunt started drinking alcohol and using crack cocaine around noon. Hunt Dep. at 62–63, 92–94. Eventually, she met up with Hammonds. *Id.* at 97. They both smoked crack cocaine together and Hunt also drank more alcohol for approximately two hours prior to going to the Food Lion grocery store. *Id.* at 91, 93, 95–96, 99–101. Hunt went into the Food Lion intending to shoplift and she walked out with alcoholic beverages without paying. *Id.* at 103–05. Hunt and Hammonds then stopped at the Dollar General because she needed to use the restroom. *Id.* at 107.

That afternoon, Officer Smith was on solo patrol. Smith Dep. at 31. At approximately 4:45 p.m., a larceny call came through the open mic and Officer Brian Ivy was dispatched to the call. *Id.* at 30. The reported larceny occurred at the Food Lion on West 5th Street. *Id.* at 33, 37. As reported, a white or Indian female had shoplifted and jumped into a blue truck with a male driver. *Id.* at 33. Officer Smith was less than a half mile from the scene, so he responded as well. *Id.* Officer Smith advised dispatch that he was already in the area and was searching for the truck. *Id.* at 34. He had descriptions of the truck, the subjects in the truck, and the license plate number. *Id.*

Officer Smith saw the truck in the Dollar General parking lot. *Id.* at 36. He asked dispatch to confirm the description of the blue pickup truck from the Food Lion, as well as the subjects in the vehicle and the license plate. *Id.* As he was pulling into the Dollar General, he saw Hunt walking towards and getting into the vehicle. *Id.* Officer Smith activated his blue lights and pulled in behind the truck, though not directly behind it. *Id.* at 38–40. He confirmed with Officer Ivy additional details about the truck having a design on the tailgate and that the female suspect had blond hair and was wearing a pink sweater. *Id.* at 38. There were others in the Dollar General parking lot at that time. *Id.* at 62.

4

Officer Smith approached the vehicle from the driver-side and identified himself as a police officer with the Lumberton Police Department investigating a larceny that had occurred earlier at Food Lion. *Id.* at 40–41. He explained that they matched the description of the suspects. *Id.* Hammonds was the driver of the vehicle and Officer Smith noticed that the passenger, Hunt, was breathing heavily. *Id.* Hammonds was cooperative and responsive, exiting the vehicle when Officer Smith asked him. *Id.* at 42–43. When Hammonds exited the vehicle, it was left running. *Id.* Officer Smith and Hammonds stood inside the open driver-side doorway, between the open door and the entrance to the vehicle. *Id.* at 44–45. Officer Smith noticed the smell of alcohol coming from Hammonds. *Id.* at 47. After patting him down, he felt something in his pocket. *Id.* Hammonds said it was a knife, but upon removing it from the pocket, Officer Smith discovered a crack pipe. *Id.* at 47–48.

While in the process of cuffing Hammonds, Officer Smith noticed Hunt move in the vehicle. *Id.* at 49. He told Hunt to stop moving and that he was detaining her. *Id.* Hunt ignored Officer Smith's commands and moved from the passenger's seat to the driver's seat. *Id.* at 49, 51. Smith yelled again at Hunt to stop moving. *Id.* at 50–51. Hunt did not respond to Officer Smith's command, but instead looked back towards him. *Id.* Officer Smith testified that she stared with "pinpoint eyes pretty much burning a hole through me. She was looking like she was looking at someone behind me." *Id.* at 51. Officer Smith went to reach for Hammonds' other hand, and noticed Hunt's hand move in a downward motion, putting the truck in reverse. *Id.* at 49. Officer Smith moved Hammonds away from the vehicle. *Id.* at 52.

Officer Smith called into the police department mic attached to his left shoulder, "She— she's driving on me. She's driving on me." *See* Audio R. Officer Smith was hit by the open door. Smith Dep. at 52. At that moment, he felt he would be trapped between his patrol vehicle and the

5

door of the accelerating truck. *Id.* He also feared that if he was knocked down, he would be run over by the front wheel of the truck. *Id.* at 52–53. To stop the threat, Officer Smith fired two consecutive shots at Hunt with his service weapon—one from the hip and a second while he was "punching out." *Id.* After the two shots were fired, Officer Smith holstered his weapon and radioed, "Shots fired. Shots fired. She tried to run me over." *See* Audio R. After firing, Officer Smith saw Hunt's body go limp. Smith Dep. at 60–61. He saw the truck rolling forward and he ran to catch up with it and put it in park. *Id.* After Officer Smith detained Hammonds, which took approximately 45 seconds, he pulled Hunt from the vehicle and laid her on the ground in order to help until EMS or back up could get there to relieve him. *Id.* at 65–66.

Defendants contend that their version of events is fully corroborated by video footage from the Dollar General's security camera. The camera was located on the opposite side of the parking lot. The passenger-side of the truck—not the driver-side where the shooting occurred—faced the security camera. The footage, which is grainy and low quality, shows Officer Smith's squad car pull up and park behind the blue pickup truck, off the left side of the back bumper. Once out of his squad car, Officer Smith checks the license plate number on the rear of the truck before returning to the driver-side. A second figure—apparently Hammonds—emerges from the driver-side and the two individuals remain on that side of the truck by the driver-side door for about 34 seconds. Hammonds then moves back away from the truck while Officer Smith remains. Almost immediately after Hammonds moves away, the vehicle rapidly accelerates backwards for 2.5 seconds during which time Officer Smith is gone from view of the camera. The truck jerks to a stop as the momentum from the movement appears to cause Officer Smith to continue backwards for a few feet, which allows him to emerge from behind the truck back into view. After pausing about 3 seconds, the truck begins to roll forward at a slow pace. Officer Smith catches up to the

6

front driver-side, and the truck eventually comes to a permanent stop near its original location. Although these details are clear, the poor quality of the video makes it impossible to see when Officer Smith drew his service weapon and fired into the truck. Consequently, *Scott*'s instructions to view facts in the light depicted by the video are of limited applicability here. 550 U.S. at 380–81.

B. Plaintiffs' facts and evidence

Plaintiffs did not file an opposing statement of material facts as required by Local Civil Rule 56.1(a)(2). This rule requires that the party opposing a summary judgment motion submit a separate statement of material facts that responds to each numbered paragraph in the movant's statement of material facts. Local Civil Rule 56.1(a)(2). The rule further provides that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." *Id.*; *United States v. Compassionate Home Care Servs., Inc.*, No. 7:14-CV-113-D, 2017 WL 1030706, at *1 n.1 (E.D.N.C. Mar. 15, 2017) (plaintiffs' statement of uncontroverted facts deemed admitted when defendants did not submit opposing statement). The rule also allows a party who believes that providing a statement of material facts would be exceptionally burdensome to request an exception. Here, plaintiffs have not requested any such exception. Accordingly, defendants' statement of material facts, the relevant portions of which the Court has chronicled above, is deemed admitted.

Any concerns over the severity of enforcing this local rule are mitigated by two factors. First, defendants' reply brief, filed on April 6, 2020, specifically called attention to this issue. Plaintiffs have therefore had two months to file a surreply or supplement the record with a statement of material facts but have chosen not to do so.

7

Second, this is not a situation where the Court would otherwise be disregarding an extensive evidentiary record submitted by the nonmovant supporting its position. In fact, plaintiffs' appendix contains no evidence supporting their version of the facts, which the Court deduces from their response brief. Plaintiffs' response does not dispute that Hunt consumed crack cocaine and alcohol throughout the afternoon, shoplifted at Food Lion, and reversed the truck while Officer Smith was standing in the driver-side doorway. Plaintiffs, however, contend that Officer Smith shot Hunt not while she was reversing the truck, but during the period that the truck was moving forward, away from Officer Smith. Plaintiffs assert that after initially reversing the truck, Hunt complied with Smith's orders and began to move the vehicle forward but was shot even though the truck was moving away from Smith.

Plaintiffs have brought forward no proper evidence to support this assertion. The low-quality video provides no support for their version of the facts. Hunt provided no deposition testimony supporting her facts because her last memory of the day was being inside the Dollar General immediately prior to the incident. Hunt Dep. at 113–20. Hammonds cannot be located and therefore has not provided any testimony supporting plaintiffs' version. Instead, plaintiffs' evidence and discussion of the facts is devoted to challenging the credibility of Officer Smith's account. For instance, plaintiffs filed evidence of Officer Smith's prior police department reprimands for sending inappropriate text messages to a fellow office and for insubordination. DE 35-13. Plaintiffs also speculate that Officer Smith could not have assessed the situation, keyed his mic, unsnapped his firearm holster, and fired two shots within the 2.5 seconds that the truck was in reverse. Pls.'s Resp. at 13–15. "[A]n opponent [to a summary judgment motion] may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative

8

evidence." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).

Plaintiffs' only affirmative evidence is a two-page report by a hired consultant that purports to be an expert opinion. Meadows Rep., DE 35-16. The report opines that Officer Smith's version of the facts is not plausible, and therefore, concludes that Officer Smith fired his gun while the truck was paused or during its initial forward motion. *Id.* This report is deficient, and the Court need not consider it for two reasons. First, it is neither sworn nor signed under the penalty of perjury. *See, e.g., Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991); *Doe v. Bd. of Educ. of Prince George's Cty.*, 982 F. Supp. 2d 641, 660 (D. Md. 2013). Second, it fails to provide sufficient facts to explain its conclusion. *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 165 (4th Cir. 1992) ("An expert's affidavit that is wholly conclusory and devoid of reasoning does not comply with Fed. R. Civ. P. 56(e).").

Accordingly, plaintiffs have brought forward no evidence supporting their version of the facts. In light of this, enforcing Local Civil Rule 56.1(a)(2) is entirely appropriate, and defendants' statement of material facts is deemed admitted. Therefore, there are no genuine issues of material fact for trial. The Court next considers whether, on the admitted facts, defendants are entitled to judgment as a matter of law.

II. <u>Defendants are entitled to judgment as a matter of law</u>

To start, in their response brief, plaintiffs explicitly abandon their claims against Officer Smith in his official capacity and their *Monell* claims against the City of Lumberton. Only plaintiffs' Fourth Amendment and tort claims remain.

Plaintiffs bring a Fourth Amendment excessive force claim against Officer Smith. Smith argues that the deadly force employed did not violate the Fourth Amendment and that, in any event, he is entitled to qualified immunity. Whether Officer Smith violated Hunt's Fourth Amendment rights bears on the qualified immunity issue, and so the Court addresses the merits of the constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Courts apply an objective reasonableness standard to determine whether the use of force by a police officer violated the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The reasonableness of the "force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Reasonableness must also allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving[.]" *Id.* at 396–97. Factors that bear on this inquiry include the relationship between the force needed and the force used, the extent of plaintiff's injury, the officer's effort to temper or limit the amount of force, and the security problem and threat perceived by the officer. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). It is well established that "[a] police officer may use deadly force when the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (quotation and citation omitted).

Here, Officer Smith had probable cause to believe that Hunt posed an imminent threat to his physical safety. At the time of the shooting, Officer Smith was in the process of detaining Hammonds on the driver-side of a truck. He smelled alcohol on Hammonds and found a crack pipe in his pocket during the pat down. While attempting to detain Hammonds, Hunt moved from the passenger's seat into the driver's seat. Officer Smith ordered her to stop moving, but she was

unresponsive. Officer Smith did not have any direct evidence that Hunt was heavily intoxicated, but the presence of the crack pipe on Hammonds and Hunt's complete non-responsiveness along with her blank stare would have raised the possibility that she was not sober. Officer Smith was then hit by the force of the open door of the accelerating pickup truck. Caught by the moving door, Officer Smith perceived a threat to his physical safety in that he could have been knocked down and run over by the front wheel or pinned between the open door and his squad car. To stop this threat, Officer Smith grabbed his service weapon and fired twice into the truck. Considering these factors, especially the immediacy of the threat and the split-second reality of the decision, the Court concludes that the use of force was objectively reasonable.

This determination is consistent with a collection of cases that allow for an officer to use deadly force against a driver of a vehicle when the vehicle poses an imminent threat of serious physical harm. *See, e.g., Plumhoff v. Rickard*, 572 U.S. 765, 776–77 (2014); *Scott v. Harris*, 550 U.S. 372, 383–84 (2007); *Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005).

The reasoning of *Waterman* bears mentioning. The officers in that case shot a driver as he was attempting to escape through a toll plaza area following an extended car chase. *Waterman*, 393 F.3d at 474. Four officers were positioned in front of the vehicle, ranging from 16 to 72 feet away, although none were directly in its path. *Id.* As the vehicle approached the toll plaza, it coasted at about 11 mph, before "lunging forward," which the officers perceived as acceleration. *Id.* at 474–75. The officers fired at the vehicle, which never accelerated to a speed above 15 mph. *Id.* Still, the Court concluded that the officers had probable cause to believe the vehicle posed an immediate threat of harm to the nearest officers. *Id.* at 478. As explained: "although [the officers] could have held their fire and taken the chance that Waterman's acceleration in traffic was not for the purpose of committing another assault against an officer, [t]he Constitution simply does not

11

require police to gamble with their lives . . . ."). *Id.* at 479. Similarly, stuck behind the open door of a reversing truck that was being driven by an unresponsive driver who was demonstrating erratic behavior, and faced with the split-second possibility of falling and being run over, Officer Smith was not required to simply hope that Hunt would hit the brakes and drive in the opposite direction.

Because the Court concludes that Officer Smith did not violate the Fourth Amendment, defendants are entitled to summary judgment on plaintiffs' excessive force claim. The "parallel state law claim of assault and battery is subsumed within the federal excessive force claim . . . ." *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). It also follows that because Officer Smith had probable cause to use deadly force, his conduct was not negligent or "outrageous and intolerable," as required for claims for NIED and IIED, respectively. *McAllister v. Ha*, 347 N.C. 638, 645 (1998); *Dickens v. Puryear*, 302 N.C. 437, 452 (1981). Defendants are therefore also entitled to summary judgment on the remaining state law tort claims.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion for summary judgment [DE 24] is GRANTED. For good cause shown, the unopposed motions to seal [DE 28, 36] are also GRANTED. The Clerk is DIRECTED to enter judgment in favor of defendants and close the case.

SO ORDERED, this __8__ day of June, 2020.

*Terrence Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE